WYNN, Judge.
Respondent, biological mother of the juvenile A.D.H., appeals from the order terminating her parental rights. Respondent argues the trial court erred by failing to appoint a guardian ad litem for Respondent as required by section 7B-1101(1) of the General Statutes. We agree with Respondent and therefore reverse the order and remand for further proceedings.
The record reflects that juvenile was born to Respondent on 7 January 1995. On 16 May 2002, Mecklenburg County Department of Social Services ("DSS") obtained non-secure custody of juvenile and filed a juvenile petition alleging neglect and dependency,upon information that Respondent's prescription drug abuse was endangering juvenile. The court summary submitted by DSS noted Respondent had been diagnosed with depression, schizoaffective disorder, and bipolar disorder and had overdosed on her prescribed medication during the course of its investigation. The trial court held an adjudication hearing on 22 August 2002, and entered an adjudication of neglect and dependency on 10 October 2002.
The initial case plan developed by DSS required Respondent to address her "identified mental health diagnosis," "history of illegal drug use," and lack of "parenting skills and knowledge." In February of 2003, in response to her limited progress, DSS developed a new case plan containing the following five goals for Respondent: (1) stabilize her mental health by complying with her treatment regimen of medication and therapy; (2) obtain stable housing and employment; (3) demonstrate her sobriety through random drug screens; (4) remain in contact with her social worker; and (5) complete parenting classes.
Following a 25 February 2003 review hearing, the trial court entered an order expressing its concern at Respondent's lack of progress. The court incorporated the findings in DSS's court summary, in which Respondent reported that she had skipped anappointment with her psychiatrist, was unemployed, and was living in a motel room after being evicted from her residence.
In an order entered 14 May 2003, the trial court ceased reunification efforts. The court found Respondent had not obtained stable housing or employment, was frequently incarcerated, had criminal charges pending against her, and continued to use controlled substances. The social worker's court summary detailed Respondent's numerous arrests for shoplifting and driving offenses, her submission to only a single drug screen, which registered positive for cocaine, and her failure to receive mental health treatment.
On 26 June 2003, the trial court changed the permanent plan to adoption and directed DSS to file a petition for termination of Respondent's parental rights. The court found Respondent "has attempted suicide, has been incarcerated, [and] has not completed the case plan objectives." The social worker's summary reported Respondent had made "no progress" and had "spent most of the last four weeks in jail or in the psychiatric hospital[,]" after attempting suicide on 6 June 2003.
DSS filed a petition to terminate Respondent's parental rights on 25 July 2003, asserting as grounds for termination that she (1) had neglected juvenile; (2) was "incapable of providing for the proper care and supervision of the juvenile, such thatthe juvenile is a dependent juvenile within the meaning of N.C.G.S. § 7B-101 and there is a reasonable probability that such incapability will continue for the foreseeable future[;]" (3) had failed for a continuous period of six months to pay for a reasonable portion of juvenile's care; and (4) had left juvenile in a placement outside the home for a continuous period of more than twelve months without reasonable progress in correcting the circumstances leading to the placement. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6) (2003).
Respondent failed to attend the 16 September 2003 termination hearing. Her permanency planning social worker, David Fee, recounted her case history and her failure to progress toward the goals established in her case plans. He noted Respondent admitted using crack cocaine in April of 2003, and had been hospitalized twice in June 2003 after overdosing on prescription drugs. Although DSS did not assert dependency as a ground for termination at the hearing, as it had in the petition, counsel for DSS made the following argument regarding the allegation of neglect:
No progress has been made toward remedying the issues which necessitate[d juvenile's] removal. There is certainly a reasonable and, I'd say, high probability that [neglect] will continue in light of the mother's ongoing mental health limitations and thestruggles there, coupled with the substance abuse.
Among the findings announced by the judge in open court was the following:
Regarding the allegation that [Respondent] is incapable of providing for the proper care and supervision and there's a reasonable probability such incapability will continue into the foreseeable future, I find that as a result of her mental health condition, consisting of bipolar disorder, depression, and schizo-affective disorder, and her substance abuse issues, that she is incapable of providing care for the juvenile.
The court further found that Respondent's mental health history prevented her from contributing financially to juvenile's care, and deemed the lack of contribution to be "a basis for my finding of neglect[.]"
The written order terminating Respondent's parental rights includeed the following findings of fact:
8. . . . There have been three separate case plans developed. One case plan developed in July, 2002 attempted to address the mother's mental health diagnosis, her history of illegal drug usage and her lack of appropriate parenting skills and knowledge. An updated plan was implemented in 2003 which required the mother to again address mental health issues, obtain stable housing, address substance abuse and improve her parenting skills.
9. That the mother has been diagnosed with severe depression, schizoaffective disorder and bipolar disorder. The mother did not complete the case plan objectives and has notmaintained regular and consistent visitation with the juvenile . . . .
10. That currently, the mother continues to have unstable housing, she has not maintained stable employment and there have been suicide attempts which require hospitalization. . . .
11. . . . She has been hospitalized for prescription drug overdose. The mother admitted to intentional drug overdoses. . . .
. . . .
17. That the mother cannot meet the juvenile's needs.
Based on these findings, the trial court concluded that grounds for termination were established, as follows:
3. That the respondent mother has neglected this juvenile as that term is defined in NCGS §7B-101(15) in that she has failed to provide proper care, supervision and discipline for the juvenile as more specifically set forth in the above findings of fact and incorporated herein. The mother has abandoned the juvenile by depriving her of her parental care. While the mother has not paid anything to defray the cost of care, failure to pay something is neglectful behavior but this Court does not find that she had the physical and financial means to pay child support.
4. That respondent mother has willfully left the juvenile in foster care or placement outside the home for more than twelve (12) months without showing to the satisfaction of the Court that reasonable [progress] has been made in correcting those conditions which led to the removal of the juvenile.
5. That the mother has been diagnosed with schizoaffective disorder, bipolar disorder, and depression which ha[ve] not been adequately addressed. The mother has not addressed substance abuse and is incapable of providing care for the juvenile. . . .
Having found grounds for termination, the trial court further concluded that termination would serve the best interests of juvenile, "in order that [she] may be placed in a permanent, safe living arrangement where her needs will be met." Respondent filed timely notice of appeal from the order.
On appeal, Respondent contends the trial court erred in failing to appoint a guardian ad litem to represent her at the termination hearing pursuant to section 7B-1101(1) of North Carolina's General Statutes. For the reasons stated herein, we agree.
The relevant provision of the Juvenile Code, section 7B-1101(1), provides that "a guardian ad litem shall be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent" and "[w]here it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6), and the incapability to provide proper care and supervision pursuant to that provision is the result of substance abuse . . . mental illness . . . or another similar cause or condition." N.C. Gen.Stat. § 7B-1101(1) (2003). Section 7B-1111(a)(6), in turn, authorizes termination of parental rights where the parent is "incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future." N.C. Gen. Stat. § 7B-1111(a)(6) (2003).
As set forth above, the termination petition filed by DSS alleged Respondent was "incapable of providing for the proper care and supervision of the juvenile such that the juvenile is a dependent juvenile within the meaning of N.C.G.S. § 7B-101" as set forth in section 7B-1111(a)(6) of North Carolina's General Statutes. As this Court has recently held,
While neglect was the ground []DSS pursued during the termination hearing and ultimately found by the trial court as the basis for terminating respondent's parental rights, there was nevertheless some evidence that tended to show that respondent's mental health issues and the child's neglect were so intertwined at times as to make separation of the two virtually, if not, impossible.
In re J.D., __ N.C. App. __, __, __ S.E.2d __, __ (May 4, 2004) (No. 03-71-2). The written record and hearing transcript are replete with evidence of Respondent's ongoing substance abuse, which included both cocaine use and intentional overdoses of prescription drugs. Although DSS did not pursue dependency as aground for termination at the hearing, it expressly argued to the trial court that Respondent's "ongoing mental health limitations and the struggles there, coupled with the substance abuse" rendered her likely to continue her neglect of juvenile for the foreseeable future. Moreover, the hearing judge announced in open court that Respondent's mental illness and substance abuse made her incapable of caring for the juvenile, thereby finding her a dependent juvenile as alleged in the petition and by section 7B-1111(a)(6) of North Carolina's General Statutes. The court's written findings of fact and conclusions of law refer on three separate occasions to Respondent's schizoaffective and bipolar disorders and depression; they further contain several references to her intoxication, substance abuse, and drug overdoses. The order includes a conclusion that Respondent's failure to adequately address her mental illness and substance abuse left her "incapable of providing care for the juvenile."
Here, as in J.D., the trial court's finding of neglect is inextricably intertwined with the evidence of Respondent's mental illness and substance abuse that formed the basis for the allegation of dependency in the termination petition. Accordingly, the order terminating Respondent's parental rights is reversed and the cause remanded for appointment of a guardianad litem pursuant to section § 7B-1101(1) of North Carolina's General Statutes and a new trial.
Reversed and remanded.
Judges TYSON and GEER concur.
Report per Rule 30(e).